IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED

01 APR -2  PM 4: 19

ELIZABETH PERRY,

        Plaintiff,

vs.

        No. CIV 96-1488 JHG/WWD

JUDY WOODWARD, individually
and as the Bernalillo County Clerk
and the Board of County Commissioners
of the County of Bernalillo,

        Defendants.

## DEFENDANTS' REQUESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW

COME NOW the Defendants Judy Woodward and the County of Bernalillo (hereafter "Defendants"), by and through their attorneys, Slease and Martinez, P.A. and hereby submit the following Requested Findings of Fact and Conclusions of Law:

### REQUESTED FINDINGS OF FACT

1. Defendant Judy Woodward was the duly elected Bernalillo County Clerk from January of 1993 to December of 2000.

2. As the Bernalillo County Clerk, Defendant Woodward was permitted to hire two deputies to serve as her personal staff.

3. Defendant Woodward hired Gayle Short to serve as one of her deputies.

4. Defendant Woodward offered the other deputy position to Mary Herrera, a female Hispanic.

5. Mary Herrera decided not to accept the position of deputy in Defendant Woodward's administration.

6. During the legislative session in February of 1993, Defendant Woodward offered

102

Plaintiff Perry the position of deputy.

7.  At the time Defendant Woodward made Plaintiff Perry the job offer, Defendant
    Woodward knew Plaintiff Perry was Hispanic.

8.  At the time Defendant Woodward made Plaintiff Perry the job offer, Defendant
    Woodward did not have any information regarding Plaintiff Perry's qualifications,
    job history and she did not request of check any of Plaintiff Perry's references.

9.  Defendant Woodward assumed that because Plaintiff Perry worked in the
    Secretary of State's office she would be familiar with election procedures.

10. Defendant Woodward offered to pay Plaintiff Perry a higher salary than the one
    she received from the Secretary of State's Office and Plaintiff Perry accepted
    Defendant Woodward's job offer.

11. Plaintiff Perry began her employment as Defendant Woodward's deputy in March
    of 1993  as the deputy of the Bureau of Elections.

12. Plaintiff Perry understood that the position of deputy was an at-will position.

13. Once Plaintiff Perry began working for Defendant Woodward, Defendant
    Woodward realized that Plaintiff Perry did not have the skills that she had
    assumed that she would have.

14. Plaintiff Perry had not worked extensively with elections at the Secretary of
    State's Office and therefore, had no practical experience in that regard.

15. Plaintiff Perry refused to learn the various job duties of her subordinates as
    Defendant Woodward had instructed her to do.  This made it impossible for the
    Plaintiff to supervise and evaluate the employees in the Clerk's Office.

16. Plaintiff Perry did not learn the duties and responsibilities of the Recording and

Filing department of the Clerk's Office as Defendant Woodward had instructed her to do.

17.    Plaintiff Perry had no computer skills and indicated that she had no interest or aptitude for learning computer skills.  Therefore, she did not take advantage of the computer classes and instruction offered by the County.

18.    Due to the Plaintiff's lack of computer skills she was not able to assist Defendant Woodward with the correspondence that needed to be generated by the Clerk's Office.

19.    During the fall of 1993, Defendant Woodward was informed and personally observed Plaintiff Perry utilizing the County telephone to campaign on behalf of a political candidate Rebecca Vigil Giron.

20.    Defendant Woodward reprimanded Plaintiff Perry and told her not to campaign on County time from the Clerk's office.

21.    Defendant Woodward learned that Plaintiff Perry would complain about her and had made negative and derogatory comments regarding Defendant Woodward  to other County employees and other State agencies.

22.    Plaintiff Perry failed to follow Defendant Woodward's instructions and directives.

23.    Defendant Woodward told Plaintiff Perry that she wanted to be included in the interviews of individuals applying for manager positions within the Clerk's Office.  However, Plaintiff Perry conducted these interviews without including Defendant Woodward.

24.    Plaintiff Perry hired Tina Gallegos to be a supervisor within the Bureau of Elections without including Defendant Woodward in the interviewing process.

3

25. Plaintiff Perry did not adequately research the issue of whether the Bureau of Elections needed 300 additional voting machines for the upcoming election.

26. Defendant Woodward relied on Plaintiff Perry's statements regarding the need for additional voting machines and was embarrassed in front of the County Commission due to Plaintiff Perry's failure to adequately perform her duties as deputy.

27. Defendant Woodward reviewed the need for additional voting machines and concluded that no additional voting machines were needed.

28. In January of 1994, Defendant Woodward realized that she could not trust or rely on Plaintiff Perry.

29. Defendant Woodward realized that she must terminate Plaintiff Perry's employment due to her poor performance and attitude.

30. Defendant Woodward decided to wait until after the legislative session concluded to terminate Plaintiff Perry for two reasons: (1) Defendant Woodward had legislation pending and needed to be in Santa Fe to lobby the legislators; and (2) Defendant Woodward, knowing that Plaintiff Perry's husband was very politically active, believed that if she terminated Plaintiff Perry before her legislation passed, Plaintiff Perry's husband would make sure that the legislation died.

31. Once the legislative session ended, Defendant Woodward told Plaintiff Perry that she needed to meet with her on Saturday, February 26, 1994.

32. Plaintiff Perry brought her husband to the meeting with Defendant Woodward. During the meeting Defendant Woodward informed Plaintiff Perry that their relationship was no longer working.

33. Plaintiff Perry's husband immediately told Defendant Woodward that she had to provide her with a reason for her termination.

34. Defendant Woodward did not believe that she had to provide Plaintiff Perry with an explanation because Plaintiff Perry was a member of her personal staff and an at-will employee and Defendant Woodward did not think that discussing all of Plaintiff Perry's deficiencies would benefit either of them.

35. Defendant Woodward did not discriminate against Plaintiff Perry on the basis of her race.

36. Defendant Woodward did not attempt to retaliate against Plaintiff Perry for hiring Hispanics to work in the Clerk's office.

37. Defendant Woodward did not terminate Tina Gallegos during her probationary period.

38. Defendant Woodward was very pleased with Ms. Gallegos and Defendant Woodward promoted Tina Gallegos and gave her a raise.

39. Plaintiff Perry did hot hire Arlene Martinez, she received a lateral transfer from the Recording and Filing Division to the Bureau of Elections. Defendant Woodward approved of the transfer and a few years after Plaintiff Perry was terminated, Defendant Woodward promoted Ms. Martinez and gave her a raise.

40. Defendant Woodward replaced Plaintiff Perry with a female Hispanic, Irene Serna.

41. Defendant Woodward promoted Irene Serna to the position of Chief Deputy, and Ms. Serna remained in that position until 2000.

42. Defendant Woodward hired four Hispanic women to serve as her deputies during

5

her administration: Plaintiff Perry, Irene Serna, Lena Gonzales, and Priscilla Gonzales.

43. During her administration, Defendant Woodward increased the number of female Hispanics by five percent.

44. On June 9, 1994, Plaintiff Perry filed a Charge of Discrimination with the New Mexico Human Rights Division alleging racial discrimination.

45. On October 20, 1994, the Plaintiff attempted to amend her Charge of Discrimination to include a claim of alleged retaliation.

46. Plaintiff Perry had no training or education which would qualify her for the position of Deputy of the Bureau of Elections in Defendant Woodward's administration.

47. Plaintiff Perry's work history demonstrates that prior to receiving political appointments, Plaintiff Perry worked in clerical, secretarial and sales positions.

48. From March of 1994 to December of 1998 there were clerical, secretarial and sales positions available in the Albuquerque area for which the Plaintiff was qualified.

49. Prior to January of 1999 Plaintiff Perry did not obtain full time employment.

50. Plaintiff Perry did not make reasonable efforts to mitigate her damages.

51. Plaintiff Perry failed to supplement her discovery to the Defendants after May 23, 1997.

52. Defendant Woodward testified and this Court finds that Defendant Woodward terminated Plaintiff Perry for the following legitimate nondiscriminatory reasons: Plaintiff Perry's poor performance and poor attitude.

6

53.     Defendant Woodward testified and this Court finds that Defendant Woodward did

        not discriminate against Plaintiff Perry nor did Defendant Woodward retaliate

        against Plaintiff Perry.

## CONCLUSIONS OF LAW

1.      Defendant Woodward articulated legitimate nondiscriminatory reasons for

        Plaintiff Perry's termination.

2.      Plaintiff Perry was unable to demonstrate that Defendant Woodward's legitimate

        nondiscriminatory reasons for her termination were a pretext for discrimination.

3.      Plaintiff Perry was unable to demonstrate the Defendant Woodward's legitimate

        nondiscriminatory reasons for her termination were a pretext for retaliation.

4.      Defendant Woodward did not discriminate against Plaintiff Perry in violation of

        the New Mexico Human Rights Act.

5.      Plaintiff Perry's attempt to amend her Charge of Discrimination filed with the

        New Mexico Human Rights Division was untimely because it was made over 180

        days after the alleged retaliation occurred.

6.      Plaintiff Perry failed to exhaust her administrative remedies.

7.      Plaintiff Perry's claim of retaliation under the Mexico Human Rights Act are

        barred.

8.      Defendant Woodward did not retaliate against Plaintiff Perry in violation of the

        New Mexico Human Rights Act.

9.      Defendant Woodward did not discriminate against Plaintiff Perry in violation of

        the 42 U.S.C. § 1981.

10.     Defendant Woodward did not retaliate against Plaintiff Perry in violation of the 42

7

U.S.C. § 1981.

11. Plaintiff Perry's claim for damages that allegedly occurred after May 23, 1997 are barred due to Plaintiff Perry's failure to supplement her responses to the Defendants' discovery requests.

12. Plaintiff Perry failed to mitigate her damages.

13. Plaintiff Perry is not entitled to any recovery against Defendants and all claims by Plaintiff against the Defendants are dismissed with prejudice and judgment is entered in favor of the Defendants.

Respectfully submitted,

SLEASE & MARTINEZ, P.A.

By _____
WILLIAM D. SLEASE
JONLYN MARTINEZ
Attorneys for Defendants
PO Box 1805
Albuquerque, NM  87103-1805
(505) 247-9488

I HEREBY CERTIFY that a true
copy of the foregoing
was mailed on this 2nd
day of April 2001 to:

Steven K. Sanders
Attorney for Plaintiff
820 2nd St. NW
Albuquerque, NM 87102-2212

8