IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ELIZABETH PERRY,
    Plaintiff,

vs.                            No. CV 96-1488 JHG/WWD

JUDY WOODWARD, INDIVIDUALLY
AND AS THE BERNALILLO COUNTY
CLERK AND THE BOARD OF COUNTY
COMMISSIONERS OF THE COUNTY
OF BERNALILLO,
    Defendants.

### PLAINTIFF'S PROPOSED PRE-TRIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

    COMES NOW the Plaintiff, ELIZABETH PERRY, by and through her attorney, Steven K. Sanders and submits the following proposed findings of fact and conclusions of law:

#### FINDINGS OF FACT

1.     This Court has jurisdiction over the parties and the subject matter.

2.     Plaintiff is a female whose race is Hispanic and whose national origin is Mexican. Defendant Judy Woodward is an individual whose race is White. At all times material hereto, Defendant Judy Woodward was the duly elected Clerk of Bernalillo County and was empowered to hire and fire Plaintiff. At all times material hereto, Defendant Judy Woodward acted within the course and scope of her powers as Clerk of Bernalillo County. Defendant Woodward was the final authority within the County of Bernalillo with final power to hire and fire Plaintiff. (Testimony of Perry and Woodward and Mascarenas and exhibit 2).

3.     During February, 1993, Plaintiff who was employed by the Secretary of State's Office in Santa Fe, New Mexico as a Deputy Secretary of State, was recruited by Judy

Woodward to work for Defendant Board of County Commissioners of the County of Bernalillo (herein "Bernalillo County") in the Bernalillo County Clerk's office as a Deputy Clerk to Judy Woodward. (Testimony of Perry and Woodward and Mascarenas).

4.   From March 1, 1993 until February 25, 1994, Plaintiff was an employee (as defined by 28-1-2(E) N.M.S.A. 1978 (2000 Repl.)) of Defendant Bernalillo County. Plaintiff as an employee of Bernalillo County had, pursuant to 42 U.S.C. § 1981, the right "to make and enforce contracts... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens..." (Plaintiff's Exhibit 1, 3, 4 and 5 and Perry and Mascarenas testimony).

5.   Plaintiff as an employee of Defendant Bernalillo County had a contract of employment entitling her to wages, compensation and employee benefits (retirement, medical insurance, sick leave, annual leave and personal leave) for services rendered. (Plaintiff's Exhibit 1, 3, 4 and 5 and Perry and Mascarenas testimony).

6.   Defendant Bernalillo County is an employer as defined (by 28-1-2(B) N.M.S.A. 1978 (2000 Repl.)) employing four or more persons. (Perry and Mascarenas testimony).

7.   Plaintiff was fired or terminated by Defendant Bernalillo County acting through Defendant Judy Woodward on the 26th day of February, 1994, effective February 25, 1994, without previous warning or complaint concerning her work performance. (Plaintiff's Exhibit 1, 3, 4 and 5 and Perry, Woodward and Mascarenas testimony).

8.   Plaintiff's termination was discussed by the County Clerk of Bernalillo County, Judy Woodward, with another employee in the Clerk's Office, Irene Serna, approximately one week prior to Plaintiff being notified of her termination. (Testimony of Irene Serna).

9. In January of 1994, Plaintiff pursuant to the recommendation of Jamie Diaz, the Manager of the Bureau of Elections, hired Tina Gallegos, a Hispanic woman to work in the Bureau of Elections. Judy Woodward after finding out about the hiring of this Hispanic woman told Plaintiff and Jamie Diaz a supervisor in the Bureau of Elections not to hire any more Hispanics. (Testimony of Perry and Diaz).

10. On or about January 20, 1994, during the County's mid-year budget meeting, a discussion concerning adding new positions to the Clerk's office ensued. During this discussion, Defendant Judy Woodward turned to Complaint and Jamie Diaz and said, "Liz, I don't want you to hire any more Hispanic candidates for any position in the County Clerk's office until you have hired an Anglo". Judy Woodward then turned to Jeanne Myers, an Anglo employee of the Clerk's office and said "And you Jeanne with your blue eyes and blonde hair stick out like a sore thumb". (Plaintiff's Complaint, paragraph 6 and Defendants' answer to paragraph 6, Perry and Diaz, Woodward, Myers testimony).

11. Judy Woodward subsequently told both Plaintiff and Jamie Diaz that they were not to even interview any Hispanic candidates for any position that was open in the Clerk's office and that Mrs. Woodward would be present for all interviews. Judy Woodward was in fact present for all interviews thereafter and told Plaintiff to interview and hire an Anglo candidate who, it was subsequently learned, had moved to California. When Plaintiff recommended hiring an African American candidate, Ms. Woodward said, "Are you sure you want to hire a Black person..." reminding Plaintiff of an EEOC discrimination complaint filed by another African American worker against Judy Woodward and the County. (Perry and Diaz testimony, Exhibit 12).

12. Judy Woodward has not set in on interviews with the subsequent Deputy Clerks, Gail Short or Irene Serna who make their own decisions on who to hire. (Woodward, Short and Serna testimony).

13. In mid February, 1994 Plaintiff hired Arlene Martinez, a Hispanic woman. In approximately the third week of February, 1994, when Judy Woodward asked Plaintiff who she had hired and was told it was Arlene Martinez, Judy Woodward turned red faced and walked away from Plaintiff without saying a word. One week later, Judy Woodward told Irene Serna that she was firing Plaintiff and one week thereafter Judy Woodward did in fact fire plaintiff. (Exhibit 1, 3, 4, and Perry and Woodward testimony).

14. Arlene Martinez was qualified for the position into which she was hired and has performed satisfactorily since her hiring. (Perry, Serna and Woodward testimony).

15. A motivating reason behind the firing of Plaintiff was retaliation for Plaintiff's hiring of Arlene Martinez, simply because Ms. Martinez is a person whose race is Hispanic. This is a protected activity that Plaintiff engaged in under 42 U.S.C. § 1981 and under the New Mexico Human Rights Act, 28-1-7 I N.M.S.A. (2000 Repl. Pamp.) which states in part that "It is an unlawful discriminatory practice for:....I. Any person or employer to: (1) aid, abet, incite, compel or coerce the doing of any unlawful discriminatory practice or to attempt to do so; (2) engage in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice...;" (Perry, Woodward, Diaz, Myers testimony).

16. During the first staff meeting held by Judy Woodward in January of 1993 after taking office as Clerk, Mrs. Woodward announced that "Hispanics" needed more education. Subsequently, Mrs. Woodward began passing out educational announcements out to Hispanic

members of the Clerk's Office. (Diaz, Byers, Chavez, Childers, Esplin, Herrera, and Woodward testimony).

17. When Plaintiff was interviewed by Judy Woodward, Plaintiff was asked if she was Hispanic. Plaintiff replied that she was Hispanic and Mexican because her mother's family was from Mexico. After she was hired, Judy Woodward told Pat Esplin that she (Judy Woodward) had hired a Hispanic Deputy Clerk but that Plaintiff did not look like a person of Hispanic origin. (Perry, Woodward, Martinez and Esplin testimony).

18. Defendant Judy Woodward told Rick Chavez that "Hispanic's were hot blooded people." and that he had a good command of English which was her way of denigrating Hispanic people. (Chavez testimony).

19. Defendant Judy Woodward told Julie Childers, that she would not interview an African American applicant for a position at the Clerk's office because the person was "not in her class." Judy Woodward mimicked Julie Childers saying "She don't speak the English too good." Defendant asked Julie Childers "Do you know why I don't like Hispanics? Its because my husband left me for one of you red-hotted Hispanics". (Childers testimony).

20. Judy Woodward referred to Donna Lopez an a "dirty Mexican" and an "ignorant person". (Lopez testimony).

21. Donna Lopez after being called a "dirty Mexican" went to Viola Cortez, a union steward crying about the comment. Judy Woodward also said that you "Hispanic's don't have enough education". (Testimony of Cortez and Martinez).

22. Judy Woodward identified individuals by their race on several occasions. When an EEOC claim by an African American employee was made against Ms. Woodward for race discrimination, Ms. Woodward hired an African American employee as a receptionist and then

bragged, "They can't accuse me of being a racist because I have a Black working for me." (Martinez, Esplin and exhibit 12).

23. Plaintiff's termination was not explained by Defendants in a way that sets aside or explains the racially biased retaliation against Plaintiff by Judy Woodward because Plaintiff engaged in protected activity by opposing an unlawful discriminatory practice by hiring a Hispanic person in violation of the orders given to her by Defendant Woodward.(Perry and Woodward testimony).

24. Defendants violated 28-1-7(A) N.M.S.A. 1978 (2000 Repl.) because Defendants discriminated in the terms, conditions or privileges of employment against Plaintiff based upon Plaintiff's race or national origin or in retaliation against Plaintiff because she hired a Hispanic employee in violation of the direct order of Judy Woodward and thus opposed an unlawful discriminatory practice under the law as prohibited by 28-1-7 I. (1) and (2) N.M.S.A. 1978 (2000 Repl.).

25. Plaintiff was otherwise qualified for her position and was never written-up nor disciplined in any way by Judy Woodward. (Perry and Woodward testimony).

26. Under 42 U.S.C. 1981 and under 28-1-7 N.M.S.A. 1978 (2000 Repl.), it is an unlawful discriminatory practice to order a subordinate not to interview and not to hire individuals of a particular race.

27. Plaintiff timely filed a Complaint with the New Mexico Human Rights Commission alleging that Defendant engaged in a discriminatory practice based upon the race (Hispanic) and National Origin of Plaintiff. The complaint was amended on October 20, 1994 to add retaliation as an additional charge. (Exhibits 4, 7 and 23).

28. Defendant engaged in an unlawful discriminatory practice in violation of the Rules and Regulations of the Human Rights Division, XII A by using hiring criteria which set up barriers to employment or promotion for qualified persons without a strict foundation in occupational necessity. (Exhibit 24).

29. At the time of her discharge by Judy Woodward, Plaintiff was earring 40,250.00 or $19.351 per hour. (Perry testimony and exhibits 1, 3, 4 and 6).

30. The Deputy Clerk's salary was raised to $43,000.00 per year starting July 1, 1995. (Serna testimony and exhibit 17).

31. At the time of her discharge by Judy Woodward, Defendant was entitled to certain employee benefits including health insurance, retirement benefits, two personal holidays per year, vacation pay at the rate of 104 hours per year and sick leave at the rate of 104 hours per year for which Plaintiff is entitled to reimbursement for a reasonable period of time. (Perry testimony and exhibits 6 and 9).

32. Plaintiff paid for her own health insurance during last two years of unemployment, the first year spending $1,474.44 or $122.87 per month and the second year spending the same amount for the first six months and then paying $181.66 per month for a total of $1,089.96 for the second year. Plaintiff's total loss of health insurance benefits for the first two years of unemployment equals $3,411.65. (Exhibit 6 and 10).

33. From the time of Plaintiff's termination by Judy Woodward, until January 1, 1999, Plaintiff was not able to secure comparable employment. (Perry testimony).

34. Plaintiff was making $40,250.08 per year ($19.351 per hour) when employed by the County. The County paid 9.15% to Public Employees Retirement Association, or an additional $3,682.90 per year. Additionally, Plaintiff was entitled to 104 hours annually for

vacation and two personal holidays or an additional 16 hours or the equivalent of $2,322.12 based upon 120 hours @ $19.351 per hour. The County also paid substantially all of the Plaintiff's medical insurance which cost Plaintiff $3,411.65 for COBRA. Plaintiff thus was earning $48,577.22 per year including benefits of retirement and medical. Plaintiff is entitled to ten months of this amount for 1994 or $40,481.02. (Perry and Mascaraneas testimony and Exhibits 6 and 9).

35. Plaintiff as a result of the unlawful discriminatory practice of Defendants lost the value of her vacation benefits which value is equivalent to the Defendant's vacation benefit of 104 hours per year times the hourly rate of compensation for Plaintiff or $19.351 per hour which equals $2,012.50 per year. (Perry testimony and Exhibits 6 and 9).

36. Plaintiff as a result of the unlawful discriminatory practice of Defendants lost one personal day earned prior to the time she was fired and two personal days for each year since termination. Each personal day is worth the Plaintiff's wages or $154.81 per day. (Perry testimony and Exhibits 6 and 9).

37. Plaintiff as a result of the unlawful discriminatory practice of Defendants lost the value of her Public Employees Retirement Act (P.E.R.A.) benefits which value is equivalent to the County's contributions to the fund on behalf of Plaintiff or $3,682.90 per year. (Perry testimony and Exhibits 6 and 9).

38. Plaintiff as a result of the unlawful discriminatory practices of Defendants lost the value of her sick leave benefits which value is equivalent to the Defendant's sick leave benefit of 104 hours per year times the hourly rate of compensation for Plaintiff or $19.351 per hour which equals $2,012.50 per year. (Perry testimony and Exhibits 6 and 9).

39. In 1995, Plaintiff earned nothing and is thus entitled to $48,577.22 in lost wages. (Perry testimony and Exhibit 6).

40. In 1996, Plaintiff earned $1,720.00 and is thus entitled to $46,857.22 in lost wages. However, the Deputy Clerk's were given a $.97 per hour raise in July, 1995 and Plaintiff is thus entitled to $2,017.60 additional damages for lost wages. (Perry testimony and Exhibit 6).

41. In 1997, Plaintiff earned $3,944.44 and is thus entitled to $44,632.78 in lost wages. However, the Deputy Clerk's were given a $.97 per hour raise in 1996 and Plaintiff is thus entitled to $2,017.60 additional damages for lost wages. (Perry testimony and Exhibit 6).

42. In 1998, Plaintiff earned $2,214.00 and is thus entitled to $46,363.22 in lost wages. However, the Deputy Clerk's were given a $.97 per hour raise in 1996 and Plaintiff is thus entitled to $ 2,017.60 additional damages for lost wages. Further, Plaintiff would be entitled to an additional 31.2 hours of vacation in this year which is an additional loss of $603.75 (31.2 hours times $19.351 per hour). (Perry testimony and Exhibits 6 and 9).

43. In 1999, Plaintiff earned $41,221.00. However, the deputy clerks were increased to $25.654 per hour (or $52,136.03 annually) at the County and Plaintiff has thus lost and is thus entitled to $10,915.03 in lost wages. However, Plaintiff has to commute to Santa Fe, New Mexico from her home in Albuquerque, New Mexico which is 128 miles round trip. Plaintiff should be compensated for this at the rate of $0.31 per mile or $35.84 per day or $9,318.40 per year.[1] Further, Plaintiff would be entitled to an additional 31.2 hours of vacation in this year which is an additional loss of $603.75. (Perry testimony and Exhibit 6).

44. In 2000, Plaintiff earned $45,742.93 and is thus entitled to $6,393.10 in lost wages. However, Plaintiff has to commute to Santa Fe, New Mexico from her home in Albuquerque,

New Mexico which is 128 miles round trip. Plaintiff should be compensated for this at the rate of $0.31 per mile or $35.84 per day or $9,318.40 per year. Further, Plaintiff would be entitled to an additional 31.2 hours of vacation in this year which is an additional loss of $603.75. (Perry testimony and Exhibit 6).

45. Plaintiff has also lost four years and ten months of retirement benefits and will have to work that extra time to retire which should be compensated at $221,090.05 the amount she is paid for working because that is the time value of her work. (Perry testimony and Exhibit 6).

46. Plaintiff, as a result of the unlawful discriminatory practice of Defendants has been damaged by suffering emotional distress, pain, suffering, inconvenience, and mental anguish which should be compensated in the amount of $100,000.00. (Perry testimony and Exhibit 6).

47. Defendant, Judy Woodward engaged in a discriminatory practice of retaliation with malice or with reckless indifference to the federally protected rights of Plaintiff as secured by 42 U.S.C. 1981 and 1981a and is entitled to punitive damages in the amount of $100,000.00 from Defendant Woodward. (Perry testimony and Exhibit 6).

48. Plaintiff was represented by an attorney for the proceedings herein and she is entitled to a reasonable attorney fee for his services. (Perry testimony and Exhibit 6).

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the Plaintiff and the Defendants.

2. New Mexico Statute 28-1-7 A. N.M.S.A. 1978 reads in part as follows:

> It is an unlawful discriminatory practice for:
>
> A. an employer, unless based on a bona fide occupational qualification, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition;

   I.   any person or employer to:
   (1) aid, abet, incite, compel or coerce the doing of any unlawful discriminatory practice or to attempt to do so;
   (2) engage in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice...;

3. Plaintiff was subject to an unlawful discriminatory practice by her employer, Defendants herein because Defendants discharged Plaintiff or unlawfully discriminated in matters of the "terms, conditions or privileges of employment against" Plaintiff because of her race or national origin or because Plaintiff opposed an unlawful discriminatory practice by hiring a person of Hispanic race or decent.

4. Defendants violated equal employment opportunity values by using hiring criteria which set up barriers to employment or promotion of qualified persons without a strict foundation in occupational necessity.

5. Plaintiff timely filed a Complaint with the New Mexico Human Rights Commission alleging that Defendant engaged in a discriminatory practice based upon the race (Hispanic) and National Origin of Plaintiff. The complaint was amended on October 20, 1994 to add retaliation as an additional charge. This amendment related back to the original filing and was thus timely.

6. Judy Woodward the Clerk of Bernalillo county did "aid, abet, incite, compel or coerce the doing of any unlawful discriminatory practice or to attempt to do so" by Defendant County in violation of 28-1-7 I. N.M.S.A.

7. Judy Woodward the Clerk of Bernalillo County intentionally engaged in reprisal or discrimination against Plaintiff because Plaintiff opposed an unlawful discriminatory practice by Defendants which violated Section 28-1-7 I.(2) N.M.S.A 1978 and 42 U.S.C. 1981.

8. The Plaintiff has lost $495,222.14 in lost wages and employment benefits since the time of her termination for which Defendants should pay to Plaintiff.

9. Plaintiff, as a result of the unlawful discriminatory practice of Defendants has been damaged by suffering emotional distress, pain, suffering, inconvenience, and mental anguish which should be compensated in the amount of $100,000.00.

10. Defendant, Judy Woodward engaged in a discriminatory practice of retaliation with malice or with reckless indifference to the federally protected rights of Plaintiff as secured by 42 U.S.C. 1981 and is entitled to punitive damages in the amount of $100,000.00 from Defendant Woodward.

11. Plaintiff was represented by an attorney for the proceedings herein and she is entitled to a reasonable attorney fee for his services.

Respectfully Submitted,

_____
STEVEN K. SANDERS
Attorney at Law
820 Second Street N.W.
Albuquerque, New Mexico 87102
(505) 243-7170

I hereby certify that a true and correct copy of the foregoing was mailed to opposing counsel of record Jonlyn Martinez, PO Box 1805, Albuquerque, New Mexico 87102 this 2nd day of April, 2001.

_____
STEVEN K. SANDERS