IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ELIZABETH PERRY,

       Plaintiff,

vs.

       No. CIV 96-1488 JHG/WD

JUDY WOODWARD, individually
and as the Bernalillo County Clerk
and the Board of County Commissioners
of the County of Bernalillo,

       Defendants.

## DEFENDANTS' REQUESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH CITATIONS TO THE TRANSCRIPT OF PROCEEDINGS OF THE TRIAL OF THIS MATTER

COME NOW the Defendants Judy Woodward and the County of Bernalillo (hereafter

"Defendants"), by and through their attorneys, Slease and Martinez, P.A. and hereby submit the

following Requested Findings of Fact and Conclusions of Law With Citations to The Transcript

of Proceedings Of The Trial of This Matter:

### REQUESTED FINDINGS OF FACT

1.     Defendant Judy Woodward was the duly elected Bernalillo County Clerk from

January of 1993 to December of 2000. ***Transcript of Proceedings dated April 10,***

***2001, Testimony of Defendant Judy Woodward*** (hereafter "Testimony of

Defendant Judy Woodward"), p. 141, lines 21-25, p. 142, lines 103, ***Transcript of***

***Proceedings dated April 9, 2001, Testimony of Plaintiff Elizabeth Perry***

(hereafter "Testimony of Plaintiff Elizabeth Perry"), p. 103, lines 9-14.

2.    As the Bernalillo County Clerk, Defendant Woodward  was permitted to hire two deputies to serve as her personal staff. *Testimony of Defendant Judy Woodward*, p. 142, lines 7-14.

3.    Deputies hired by an elected official are at-will employees and serve at the pleasure of the elected official.  *Testimony of Defendant Judy Woodward*, p. 142, lines 7-14, *Testimony of Plaintiff Elizabeth Perry*, pp's 143-144.

4.    Defendant Woodward hired Gayle Short to serve as one of her deputies. *Testimony of Defendant Judy Woodward*, p. 142, lines 21-25.

5.    Defendant Woodward offered the other Deputy position to Mary Herrera, a female Hispanic. *Testimony of Plaintiff Elizabeth Perry*, p. 136, lines 17-20, *Testimony of Defendant Judy Woodward*, p. 143, lines 12-20.

6.    Mary Herrera decided not to accept the position of Deputy in Defendant Woodward's administration. *Testimony of Plaintiff Elizabeth Perry*, p. 136, lines 3-7.

7.    During the legislative session in February of 1993, Defendant Woodward offered Plaintiff Perry the position of Deputy. *Testimony of Plaintiff Elizabeth Perry*, p. 135, lines 11-14, p. 135, lines 23-25, and p. 136.

8.    At the time Defendant Woodward made Plaintiff Perry the job offer, Defendant Woodward knew Plaintiff Perry was Hispanic. *Testimony of Plaintiff Elizabeth Perry*, p. 136, lines 22-25.

9.    At the time Defendant Woodward made Plaintiff Perry the job offer, Defendant Woodward did not have any information regarding Plaintiff Perry's qualifications,

job history and she did not request or check any of Plaintiff Perry's references. ***Testimony of Defendant Judy Woodward***, p. 146, lines 13-23.

10. Defendant Woodward assumed that because Plaintiff Perry worked in the Secretary of State's office she would be familiar with election procedures. ***Testimony of Defendant Judy Woodward***, p. 147, lines 1-6.

11. Plaintiff Perry had no training or education which would qualify her for the position of Deputy of the Bureau of Elections in Defendant Woodward's administration. ***Testimony of Plaintiff Elizabeth Perry***, pp's 137-140.

12. Plaintiff Perry's work history demonstrates that prior to receiving political appointments, Plaintiff Perry worked in clerical, secretarial and sales positions. ***Testimony of Plaintiff Elizabeth Perry***, pp's 140-142.

13. In 1986, Plaintiff Perry gave up her employment with the Governor's Constituency Center, with PERA benefits, to help run the Ray Powell for Governor campaign, an uncompensated position. Plaintiff Perry did not seek re-employment until 1991. ***Testimony of Plaintiff Elizabeth Perry***, pp's 141-143.

14. Defendant Woodward offered to pay Plaintiff Perry a higher salary than the one she received from the Secretary of State's Office and Plaintiff Perry accepted Defendant Woodward's job offer. ***Testimony of Plaintiff Elizabeth Perry***, p. 19, lines 21-25, p. 20, lines 1-5.

15. Defendant Woodward paid Plaintiff Perry the same salary that she paid her Anglo Deputy, Gayle Short. ***Testimony of Plaintiff Elizabeth Perry***, p. 28, lines 9-18.

16.   The salary paid by Defendant Woodward to Plaintiff Perry was the highest salary
      that Plaintiff Perry had ever received. *Testimony of Plaintiff Elizabeth Perry*, p.
      146, lines 3-8.

17.   Plaintiff Perry began her employment as Defendant Woodward's Deputy in March
      of 1993  as the Deputy of the Bureau of Elections. *Testimony of Plaintiff
      Elizabeth Perry*, p. 24, lines 5-11.

18.   Plaintiff Perry understood that the position of Deputy was an at-will position.
      *Testimony of Plaintiff Elizabeth Perry*, pp's 143-144.

19.   Once Plaintiff Perry began working for Defendant Woodward, Defendant
      Woodward realized that Plaintiff Perry did not have the skills that Defendant
      Woodward  had assumed that Plaintiff Perry would have. *Testimony of
      Defendant Judy Woodward*, p. 148.

20.   Plaintiff Perry had not worked extensively with elections at the Secretary of
      State's Office and therefore, had no practical experience in that regard. *Testimony
      of Plaintiff Elizabeth Perry*, pp's 146-150, *Testimony of Defendant Judy
      Woodward*, p. 148, lines 16-24.

21.   Plaintiff Perry refused to learn the various job duties of her subordinates in the
      Bureau of Elections as Defendant Woodward had instructed her to do.  This made
      it impossible for the Plaintiff to properly supervise and evaluate the employees in
      the Bureau of Elections in the Clerk's Office. *Transcript of Proceedings dated
      April 11, 2001, Testimony of Jeanne Myers* (hereafter "Testimony of Jeanne
      Myers"), p. 5, lines 10-18, p. 11, lines 2-8.

22.   Plaintiff Perry did not learn the duties and responsibilities of the Recording and
Filing department of the Clerk's Office as Defendant Woodward had instructed
her to do. *Testimony of Jeanne Myers*, p. 6, lines 15-21, *Testimony of Defendant
Judy Woodward*, p. 148-149, *Transcript of Proceedings dated April 11, 2001,
Testimony of Irene Serna* (hereafter "Testimony of Irene Serna"), pp's 26-27.

23.   Plaintiff Perry spent most of her time, while employed as Defendant Woodward's
Deputy, making personal telephone calls that were not related to her duties as
Deputy of the Bureau of Elections. *Testimony of Jeanne Myers*, p. 7, lines 1-7.

24.   Plaintiff Perry had no computer skills and indicated that she had no interest or
aptitude for learning computer skills.  Therefore, she did not take advantage of the
computer classes and instruction offered by the County. *Testimony of Plaintiff
Elizabeth Perry*, p 139, lines 9-25, p. 140, line 1.

25.   During 1993, Plaintiff Perry spent the majority of her time in the Clerk's Office
planning the Governor's Career Development Conference which had nothing to
do with her duties as Deputy of the Bureau of Elections. *Testimony of Jeanne
Myers*, p. 7, lines 8-21.

26.   Plaintiff Perry also instructed her assistant, Jeanne Myers to work on the
Governor's Career Development Conference on County time. *Testimony of
Jeanne Myers*, p. 7, lines 22-25, p. 8, lines 1-9.

27.   While at the  Governor's Career Development Conference, Plaintiff Perry told
individuals that Defendant Woodward was crazy and was an incompetent Clerk.
*Testimony of Jeanne Myers*, p. 8, lines 13-24.

28.   Plaintiff Perry told the spouse of her personal assistant, Jeanne Myers, that Defendant Woodward was crazy and incompetent. *Testimony of Jeanne Myers*, p. 8, line 25, p. 9, lines 1-12.

29.   During the fall of 1993, Defendant Woodward was informed and personally observed Plaintiff Perry utilizing the County telephone to campaign on behalf of a political candidate, Rebecca Vigil Giron, during business hours using County equipment. *Testimony of Defendant Judy Woodward*, p. 152, lines 7-21.

30.   Defendant Woodward reprimanded Plaintiff Perry and told her not to campaign on County time from the Clerk's office. *Testimony of Defendant Judy Woodward*, p. 152, lines 22-24.

31.   Defendant Woodward learned that Plaintiff Perry would complain about her and had made negative and derogatory comments regarding Defendant Woodward to various individuals. *Testimony of Defendant Judy Woodward*, p. 153, lines 21-25, p. 154, lines 7-16.

32.   Plaintiff Perry would spread derogatory and malicious gossip regarding political candidates and County employees while she was employed as Defendant Woodward's Deputy.  Defendant Woodward reprimanded Plaintiff and instructed Plaintiff Perry to stop gossiping. *Testimony of Defendant Judy Woodward*, p. 153, lines 5-13, p. 154, lines 17-23.

33.   Plaintiff Perry did not get along with other supervisors employed by the Bernalillo County Clerk's Office. *Testimony of Defendant Judy Woodward*, p. 157. *Testimony of Irene Serna*, p. 28-30.

6

34.     Plaintiff Perry failed to follow Defendant Woodward's instructions and directives. ***Testimony of Plaintiff Elizabeth Perry***, p 151-161, ***Testimony of Defendant Judy Woodward***, pp's 230-242.

35.     Defendant Woodward told Plaintiff Perry that she wanted to be included in the interviews of individuals applying for manager, supervisor or important positions within the Clerk's Office. ***Testimony of Defendant Judy Woodward***, 158, lines 5-14, p. 165, lines 10-15.

36.     Defendant Woodward never instructed Plaintiff Perry not to hire any more Hispanics in the Bernalillo County Clerk's Office. ***Testimony of Defendant Judy Woodward***, p. 158-164.

37.     Defendant Woodward wanted to make sure that people of all races were given opportunities in the Clerk's Office. ***Testimony of Defendant Judy Woodward***, 163, lines 24-25, p. 164, lines 1-9.

38.     An opening existed in the Clerk's Office for an Absentee Voting Coordinator, a classified position.  This was an important position in the Clerk's office because the Absentee Voting Coordinator would handle early voting for the first time and would supervise other employees. ***Testimony of Plaintiff Elizabeth Perry,*** p. 165, lines 24-25, p. 166, lines 1-10, ***Testimony of Defendant Judy Woodward***, pp's 165-166.

39.     Jaime Diaz, Plaintiff Perry's subordinate, informed Plaintiff Perry that Tina Gallegos, a woman Mr. Diaz knew, would be perfect for the Absentee Voting Coordinator position. ***Testimony of Plaintiff Elizabeth Perry,*** p.166, lines 11-17.

40.    Plaintiff Perry, through Jaime Diaz, contacted Tina Gallegos, informed her that the Absentee Voting Coordinator position was available in the Bureau of Elections of the Clerk's office.  Then, both Plaintiff Perry and Mr. Diaz took Ms. Gallegos to lunch to further discuss the position.  *Testimony of Plaintiff Elizabeth Perry,* p. 166, lines 20-25, p. 167, lines 1-5.

41.    Plaintiff Perry deliberately conducted interviews for the position of Absentee Voting Coordinator without including Defendant Woodward, despite Defendant Woodward's specific instruction that she do so. *Testimony of Plaintiff Elizabeth Perry,* p. 167, lines 12-21.

42.    Plaintiff Perry hired Tina Gallegos to be the Absentee Voting Coordinator with the recommendation of Jaime Diaz.  *Testimony of Plaintiff Elizabeth Perry,* p. 167, lines 9-11.

43.    Plaintiff Perry's contact, lunch and subsequent hiring of Ms. Gallegos constituted preselection.  Preselecting an individual for a classified position within Bernalillo County violates Bernalillo County's personnel policies. *Transcript of Proceedings of April 9, 2001, Testimony of Juan Vigil* (hereafter "Testimony of Juan Vigil"), pp's 281-283.

44.    Despite Plaintiff Perry's insubordination for failing to include Defendant Woodward in the interviewing and hiring process of Ms. Gallegos, Defendant Woodward was very pleased with the hiring of Tina Gallegos because she performed well and was an excellent employee.  After Plaintiff Perry's termination, Defendant Woodward promoted Ms. Gallegos and increased her rate of pay. *Testimony of Defendant Judy Woodward*, p. 167, lines 2-12.

8

45.     Arlene Martinez began her employment with the Bernalillo County Clerk's Office in 1980 and was not hired by Plaintiff Perry. *Testimony of Defendant Judy Woodward*, pp's 180-182.

46.     Arlene Martinez requested a transfer from the Recording and Filing Division of the Clerk's Office to the Bureau of Elections because she was not getting along with some of her co-workers. *Testimony of Defendant Judy Woodward*, pp's 180-182.

47.     Defendant Woodward was aware of the transfer, approved of it, and Plaintiff Perry signed Arlene Martinez' paperwork for the transfer. *Testimony of Defendant Judy Woodward*, pp's 180-182.

48.     Transferring Arlene Martinez from one division in the Clerk's office to another did not change the ethnic make-up of the Clerk's Office. *Testimony of Plaintiff Elizabeth Perry,* p. 171, lines 14-22.

49.     After Plaintiff Perry's termination, Defendant Woodward promoted Arlene Martinez and increased her rate of pay. *Testimony of Defendant Judy Woodward*, p. 181, lines 22-25, p. 182, lines 1-5.

50.     As the Deputy over the Bureau of Elections, Plaintiff Perry was charged with the responsibility of determining whether the Clerk's Office needed additional voting machines for the 1994 elections. *Testimony of Defendant Judy Woodward*, pp's 170-171.

51.     Plaintiff Perry did not adequately research the issue of whether the Bureau of Elections needed additional voting machines for the upcoming election and instead relied on the unsubstantiated suggestions of her subordinates. *Testimony*

9

*of Plaintiff Elizabeth Perry*, pp's 155-158, *Testimony of Juan Vigil*, pp's 273-276, *Testimony of Defendant Judy Woodward*, pp's 171-175.

52.     Without documentation or research, Plaintiff Perry informed Defendant Woodward that the Clerk's Office needed an additional 300 voting machines at a cost of $1.3 million. *Testimony of Defendant Judy Woodward*, pp's 171-175.

53.     Defendant Woodward relied on Plaintiff Perry's statements regarding the need for additional voting machines and went before the Board of County Commissioners for Bernalillo County to request that they expend $1.3 million of public money for additional voting machines. *Testimony of Defendant Judy Woodward*, pp's 171-175.

54.     The Board of County Commissioners for Bernalillo County requested that Defendant Woodward document and support the need for this enormous expenditure, and Defendant Woodward found that Plaintiff Perry had provided her with no documentation or information to support Plaintiff Perry's recommendations. *Testimony of Defendant Judy Woodward*, pp's 171-175.

55.     The County Manager, Juan Vigil, sent Defendant Woodward a letter instructing her to reprimand Plaintiff Perry and Jaime Diaz for their failure to adequately research such a large request for public funds. *Testimony of Defendant Judy Woodward*, p. 174, lines 4-11, *Testimony of Juan Vigil*, pp's 273-276.

56.     Defendant Woodward sent letters to both Mr. Diaz and Plaintiff Perry indicating Defendant Woodward's disapproval of their conduct with regard to the request for additional voting machines. *Testimony of Defendant Judy Woodward*, p. 174.

57.    Defendant Woodward was embarrassed in front of the County Commission and the County manager due to Plaintiff Perry's failure to adequately perform her duties as Deputy. *Testimony of Defendant Judy Woodward*, pp's 171-175.

58.    In January of 1994, Defendant Woodward subsequently personally reviewed the need for additional voting machines and concluded that no additional voting machines were needed. No additional voting machines were purchased, and during the 1994 election there was a surplus of 50 voting machines. *Testimony of Defendant Judy Woodward*, p. 173, lines 1-19.

59.    In light of Plaintiff Perry's numerous performance deficiencies as well as her poor attitude, after the voting machine incident, in January of 1994, Defendant Woodward realized that she could not trust or rely on Plaintiff Perry. *Testimony of Defendant Judy Woodward*, p. 175, lines 14-22.

60.    Defendant Woodward realized that she must terminate Plaintiff Perry's employment due to her poor performance and poor attitude. *Testimony of Defendant Judy Woodward*, p. 175, lines 14-22.

61.    Defendant Woodward decided to wait until after the legislative session concluded to terminate Plaintiff Perry for two reasons: (1) Defendant Woodward had legislation pending and needed to be in Santa Fe to lobby the legislators; and (2) Defendant Woodward, knowing that Plaintiff Perry's husband was very politically active, believed that if she terminated Plaintiff Perry before her legislation passed, Plaintiff Perry's husband would make sure that the legislation died. *Testimony of Defendant Judy Woodward*, p. 175, lines 23-25, p. 176, lines 1-13.

11

62.   Once the legislative session ended, Defendant Woodward told Plaintiff Perry that she needed to meet with her on Saturday, February 26, 1994. *Testimony of Defendant Judy Woodward*, p. 176, lines 10-18.

63.   Plaintiff Perry brought her husband to the meeting with Defendant Woodward. During the meeting Defendant Woodward informed Plaintiff Perry that their relationship was no longer working. *Testimony of Defendant Judy Woodward*, p. 176, lines 17-25.

64.   Plaintiff Perry's husband immediately told Defendant Woodward that she had to provide her with a reason for her termination. *Testimony of Defendant Judy Woodward*, p. 176, lines 17-25.

65.   Defendant Woodward did not believe that she had to provide Plaintiff Perry with an explanation because Plaintiff Perry was a member of her personal staff and an at-will employee and Defendant Woodward did not think that discussing all of Plaintiff Perry's deficiencies would benefit either of them. *Testimony of Defendant Judy Woodward*, p. 177.

66.   Defendant Woodward did not discriminate against Plaintiff Perry on the basis of her race. *Testimony of Defendant Judy Woodward*, p. 201.

67.   Defendant Woodward did not retaliate against Plaintiff Perry for hiring Hispanics to work in the Clerk's office. *Testimony of Defendant Judy Woodward*, p. 182, lines 23-25.

68.   Shortly after her termination, Plaintiff Perry actively campaigned and traveled on behalf of Rebecca Vigil-Giron, Plaintiff Perry's current employer. *Testimony of Plaintiff Elizabeth Perry*, p. 162, lines 4-14.

69.   Plaintiff Perry did not actively seek employment after her termination. ***Testimony of Plaintiff Elizabeth Perry,*** pp's 177-184.

70.   From March of 1994 to December of 1998 there were clerical, secretarial and sales positions available in the Albuquerque area for which the Plaintiff was qualified. ***Testimony of Plaintiff Elizabeth Perry,*** pp's 177-184.

71.   Plaintiff Perry sought and received unemployment benefits in the amount of $400.00 per week for 26 weeks and she worked a few legislative sessions as a tour guide and a supervisor of the tour guides where she earned approximately $3,000.00. ***Testimony of Plaintiff Elizabeth Perry,*** p. 93, lines 13-23, p. 97-99, p. 176.

72.   Prior to January of 1999 Plaintiff Perry did not obtain full time employment. ***Testimony of Plaintiff Elizabeth Perry,*** p. 100, lines 16-19.

73.   Plaintiff Perry did not make reasonable efforts to mitigate her damages. ***Testimony of Plaintiff Elizabeth Perry,*** pp's 177-184.

74.   Plaintiff Perry received another political appointment in 1999 and currently works as the Assistant Secretary of State for Rebecca Vigil-Giron. ***Testimony of Plaintiff Elizabeth Perry,*** p. 100, lines 20-25, p. 101, lines 1-6.

75.   Plaintiff Perry did not present any evidence that she is entitled to receive Bernalillo County's contribution made on her behalf to PERA upon separation. ***Testimony of Plaintiff Elizabeth Perry,*** pp's 185-186.

76.   Plaintiff Perry did not present any evidence that would demonstrate that she would have been given any raise or salary increase had she continued her employment with Bernalillo County. The salary of a Deputy is left to the sole

discretion of the elected official. *Testimony of Plaintiff Elizabeth Perry,* p. 188, lines 1-4, *Testimony of Juan Vigil*, pp's 277-278.

77.     Plaintiff Perry did not have the requisite number of sick leave hours accumulated that would enable her to convert this time into annual leave. *Testimony of Plaintiff Elizabeth Perry,* pp's 186-187, *Testimony of Juan Vigil*, p. 283.

78.     Plaintiff Perry did not present any evidence that would demonstrate that she would have been able to cash in her personal leave days upon separation from the County. *Testimony of Plaintiff Elizabeth Perry,* p. 187, lines 14-18, *Testimony of Juan Vigil*, p. 283.

79.     Defendant Woodward replaced Plaintiff Perry with a female Hispanic, Irene Serna. *Testimony of Defendant Judy Woodward*, p. 177, line 25, p. 178, lines 1-14.

80.     Irene Serna had previously supervised and managed various title companies and had formerly been a Deputy for a Bernalillo County Treasurer. *Testimony of Irene Serna*, pp's 23-24.

81.     After she was promoted to the position of Deputy, Irene Serna learned the complete operations of the Bureau of Elections and was a hands-on and effective manager. *Testimony of Juan Vigil*, p. 279, *Testimony of Irene Serna*, pp's 31, 33, 36.

82.     Defendant Woodward subsequently promoted Irene Serna to the position of Chief Deputy, and Ms. Serna remained in that position until 2000 when she left for a

14

classified position within Bernalillo County. ***Testimony of Defendant Judy Woodward***, p. 178-179.

83.    Irene Serna was Defendant Woodward's highest paid Deputy. ***Testimony of Defendant Judy Woodward***, p. 179, ***Testimony of Irene Serna***, p. 38, line 25, p. 39, line 1.

84.    During the time that Ms. Serna served as Defendant Woodward's Deputy, Defendant Woodward never instructed her not to hire any Hispanics. ***Testimony of Irene Serna***, pp's 40-42.

85.    During her administration, Defendant Woodward increased the number of female Hispanics in the Bernalillo County Clerk's Office by ten to fifteen percent. ***Testimony of Juan Vigil***, p. 277.

86.    In addition to Irene Serna and Plaintiff Perry, Defendant Woodward hired two other Hispanic women to serve as her deputies during her administration: Lena Gonzales, and Priscilla Martinez. ***Testimony of Defendant Judy Woodward***, p. 178, lines 21-25, p. 179, lines 1-7.

87.    Defendant Woodward hired an African American woman named Olivia Bolden to work as her personal administrative assistant. Ms. Bolden worked for Defendant Woodward in that capacity from 1996 until the end of Defendant Woodward's term in office. ***Testimony of Defendant Judy Woodward***, pp's 197-199.

88.    Defendant Woodward terminated two deputies during her administration due to poor performance and poor attitude: Plaintiff Perry and Mary Jo Hooker, an Anglo. ***Testimony of Defendant Judy Woodward***, p. 179, lines 19-25, p. 180, lines 1-6.

15

89.   The witnesses called by Plaintiff Perry to discuss racist comments purportedly made by Defendant Woodward were not credible.  Many of these same individuals were political opponents of Defendant Woodward or they sought re-employment by Defendant Woodward despite their contentions that she made inappropriate remarks regarding Hispanics. ***Testimony of Defendant Judy Woodward***, p. 178, lines 15-20, ***Transcript of Proceedings of April 9, 2001, Testimony of Jaime Diaz*** (hereafter "Testimony of Jaime Diaz"), p. 243, lines 21-25, p. 244, lines 1-14, ***Transcript of Proceedings of April 9, 2001, Testimony of Josie Byers*** (hereafter "Testimony of Josie Byers"), p. 247, lines 13-15, p. 248, lines 13-17, ***Transcript of Proceedings of April 9, 2001, Testimony of Dolores Waller*** (hereafter "Testimony of Dolores Waller"), p. 257, lines 1-16.

90.   Jaime Diaz was not a credible witness.  Mr. Diaz filed his own claims against Defendant Woodward and Irene Serna based on allegations of gender discrimination and race discrimination because both Defendant Woodward and Ms. Serna expected Mr. Diaz to be accountable for his time in the Clerk's Office and both Defendant Woodward and Ms. Serna expected him to follow the proper procedures required by the County.  Mr. Diaz' testimony was inconsistent with the testimony he gave to the Hearing Officer for the New Mexico Human Rights Commission in April of 1996. ***Testimony of Defendant Judy Woodward***, p. 192, lines 7-24, pp's 193-194, ***Testimony of Jaime Diaz***, pp's 241-242.

91.   Janice Satcher, an African American woman,  filed an EEOC charge of discrimination against Defendant Woodward and later a lawsuit alleging that she was discriminated against by Defendant Woodward when Defendant Woodward

16

hired Irene Serna as a supervisor in the Recording and Filing Division in 1993. Ms. Satcher subsequently dismissed her lawsuit against Defendant Woodward and stated that her claims lacked any factual basis. ***Testimony of Defendant Judy Woodward***, p. 200.

92. Other than to comment that Plaintiff Perry was Hispanic but did not look Hispanic, Defendant Woodward did not direct any comment to Plaintiff Perry about her race or national origin. ***Testimony of Plaintiff Elizabeth Perry,*** p. 172.

93. Defendant Woodward testified and this Court finds that Defendant Woodward terminated Plaintiff Perry for the following legitimate nondiscriminatory, non-retaliatory reasons: Plaintiff Perry's poor performance and poor attitude. ***Testimony of Defendant Judy Woodward***, p. 201 and pp's 230-242.

94. Defendant Woodward testified and this Court finds that Defendant Woodward did not discriminate against Plaintiff Perry nor did Defendant Woodward retaliate against Plaintiff Perry. ***Testimony of Defendant Judy Woodward***, p. 201.

## CONCLUSIONS OF LAW

1. Defendant Woodward articulated legitimate, nondiscriminatory and nonretaliatory reasons for Plaintiff Perry's termination.

2. Plaintiff Perry was not terminated because of her race.

3. Plaintiff Perry was not terminated because she hired Tina Gallegos or because she approved Arlene Martinez' transfer into the Bureau of Elections.

4. Plaintiff Perry was terminated by Defendant Woodward because of her poor attitude and performance while she worked as Defendant Woodward's Deputy of the Bureau of Elections.

5.   Plaintiff Perry was unable to demonstrate that Defendant Woodward's legitimate nondiscriminatory reasons for her termination were a pretext for discrimination.

6.   Plaintiff Perry was unable to demonstrate the Defendant Woodward's legitimate nondiscriminatory reasons for her termination were a pretext for retaliation.

7.   Plaintiff Perry failed to show any causal nexus between Defendant Woodward's alleged comments and her discharge.

8.   Defendant Woodward did not discriminate against Plaintiff Perry in violation of the New Mexico Human Rights Act.

9.   Defendant Woodward did not retaliate against Plaintiff Perry in violation of the New Mexico Human Rights Act.

10.  Defendant Woodward did not discriminate against Plaintiff Perry in violation of 42 U.S.C. § 1981.

11.  Defendant Woodward did not retaliate against Plaintiff Perry in violation of 42 U.S.C. § 1981.

12.  Plaintiff Perry failed to mitigate her alleged damages.

13.  Plaintiff Perry is not entitled to any recovery against Defendants and all claims by Plaintiff against the Defendants are dismissed with prejudice and judgment is entered in favor of the Defendants.

Respectfully submitted,

SLEASE & MARTINEZ, P.A.

By: _____
    WILLIAM D. SLEASE
    JONLYN M. MARTINEZ
    Attorneys for Defendants
    PO Box 1805
    Albuquerque, NM  87103-1805
    (505) 247-9488

I HEREBY CERTIFY that a true
copy of the foregoing was mailed
on this 4th day of June 2001 to:

Steven K. Sanders
Attorney for Plaintiff
820 2nd St. NW
Albuquerque, NM 87102-2212